UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER WARDLAW,

       Petitioner,                      Hon. Paul L. Maloney

v.                                                 Case No. 1:04-CV-848

CAROL HOWES,

       Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Wardlaw's petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Wardlaw's petition be **denied**.

## BACKGROUND

On March 20, 1995, Petitioner was arrested and charged with seven drug-related offenses. (Preliminary Examination Transcript, April 11, 1995, 52-53). Specifically, Petitioner was charged with (a) one count of conspiracy to deliver 225 grams or more, but less than 650 grams, of cocaine;[1] (b) two counts of delivery of less than 50 grams of cocaine;[2] (c) three counts of delivery of 50 grams or more,

---

[1] Under then existing Michigan law, a person convicted of violating this provision "shall be imprisoned for not less than 20 years nor more than 30 years." Mich. Comp. Laws § 333.7401(2)(a)(ii) (1995).

[2] Under then existing Michigan law, a person convicted of violating this provision "shall be imprisoned for not less than 1 year nor more than 20 years." Mich. Comp. Laws § 333.7401(2)(a)(iv) (1995).

but less than 225 grams, of cocaine;[3] and (d) one count of distribution of an imitation controlled substance.[4] (Preliminary Examination Transcript, April 18, 1995, 71-72; Plea Transcript, March 29, 1996, 12-13). Under then existing Michigan law, any terms of imprisonment imposed for convictions of Mich. Comp. Laws § 333.7401(2)(a) "shall be imposed to run consecutively with any term of imprisonment imposed for the commission of another felony." Mich. Comp. Laws § 333.7401(3). Thus, if convicted on all seven counts, Petitioner faced a mandatory minimum sentence of 52 years in prison.

At a preliminary examination, Deputy Todd Wood testified that he purchased cocaine from Petitioner (and Christopher Wardlaw) on six occasions between February 16, 1995, and March 20, 1995. (Preliminary Examination Transcript, April 11, 1995, 6-52). Following the preliminary examination, Petitioner was bound over for trial on all seven counts with which he had been charged. (Preliminary Examination Transcript, April 18, 1995, 85-87).

On March 29, 1996, Petitioner agreed to enter a *Cobbs* plea[5] to all seven counts. (Plea Transcript, March 29, 1996, 13, 25). The trial judge informed Petitioner that if he pleaded guilty he would impose a minimum sentence of 18 years in prison. *Id.* at 13. Satisfied with this agreement, Petitioner pleaded guilty to all seven counts with which he had been charged. *Id.* at 13-24. Petitioner also pleaded guilty to being an habitual offender.[6] *People v. Wardlaw*, No. 197568, Opinion at 1 (Mich.

---

[3] Under then existing Michigan law, a person convicted of violating this provision "shall be imprisoned for not less than 10 years nor more than 20 years." Mich. Comp. Laws § 333.7401(2)(a)(iii) (1995).

[4] Under then existing Michigan law, a person convicted of violating this provision may be imprisoned for "not more than 2 years" or fined $10,000, or both. Mich. Comp. Laws § 333.7341(3), (8) (1995).

[5] In *People v. Cobbs*, 505 N.W.2d 208 (Mich. 1993), the Michigan Supreme Court authorized a particular type of plea agreement in which the trial judge indicates (as part of the plea agreement) a proposed sentence; while the judge is not bound to impose this particular sentence, if he fails to do so the defendant retains the absolute right to withdraw his plea. *See Wright v. Lafler*, 2007 WL 2566042 at *1 (6th Cir., Sept. 5, 2007).

[6] Under then existing Michigan law, the court was authorized to sentence Petitioner, as an habitual offender, "to imprisonment for a maximum term which is not more than twice the longest term prescribed by law for a first conviction." Mich.

Ct. App., June 30, 1998). Petitioner was subsequently sentenced to a term of imprisonment of at least 18 years but not more than 180 years. (Sentencing Transcript, May 10, 1996, 34-35). The prosecution objected to Petitioner's sentence, asserting that there did not exist any legitimate reason to sentence Petitioner to a term of imprisonment shorter in duration than the mandatory minimum sentences provided by Michigan law. *Id.* at 24-32.

The prosecution appealed the matter to the Michigan Court of Appeals, which concluded that "[b]ecause the sentencing court considered inappropriate factors in conjunction with appropriate factors and failed to explain why any of the factors it identified satisfied the statutory standard of deviation from the mandatory minimum sentences," the matter must be remanded for resentencing. *People v. Wardlaw*, No. 197568, Opinion at 2 (Mich. Ct. App., June 30, 1998). This determination was not appealed to the Michigan Supreme Court. (Dkt. #25).

On March 22, 1999, Petitioner again agreed to enter a *Cobbs* plea to the seven drug-related offenses, as well as the habitual offender charge. (Plea Transcript, March 22, 1999, 5-6, 12-13). The court informed Petitioner that if he pleaded guilty he would be sentenced "to not more than 20 years on all of these charges." *Id.* at 13. Satisfied with this agreement, Petitioner pleaded guilty to all eight counts with which he had been charged. *Id.* at 7-24. Petitioner was sentenced to a term of imprisonment of at least 20 years but not more that 264 years. (Sentencing Transcript, May 7, 1999, 14-17).

Asserting the following claim, Petitioner subsequently moved in the Michigan Court of Appeals for leave to appeal:

> I.   Defendant was deprived of his [Sixth Amendment] rights by ineffective assistance of counsel who failed to negotiate a Cobbs plea as to the maximum sentences.

---

Comp. Laws § 769.11(a) (1995).

The court denied Petitioner's request "for lack of merit in the grounds presented." *People v. Wardlaw*, No. 226984, Order (Mich. Ct. App., July 27, 2000). Asserting the following claims, Petitioner then moved in the Michigan Supreme Court for leave to appeal:

> I. Defendant was deprived of [Sixth Amendment] rights by ineffective assistance of counsel who failed to negotiate a Cobbs plea as to the maximum sentences.
>
> II. The trial court did not abuse its discretion in deviating from the mandatory minimum sentence where there were numerous objective and verifiable factors which constituted substantial and compelling reason for departure.
>
> III. The sentence imposed was proportionate to the offender and the particular circumstances of the offense and a proper exercise of sentencing discretion.
>
> IV. Defendant was denied the effective assistance of appellate counsel where counsel failed to raise a meritorious claim on appeal of police entrapment.

The court denied Petitioner's request for leave to appeal, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Wardlaw*, No. 117682, Order (Mich., Feb. 26, 2001).

On February 6, 2002, Petitioner filed in the trial court a motion for relief from judgment in which he asserted the following claims:

> I. Defendant-Appellant's guilty plea was not constitutionally valid, and does not represent a voluntary, knowing and intelligent waiver of rights, where the trial court failed to advise Defendant of his right to be tried by jury or tried by the court without a jury, and his right to remain silent, and not have his silence used against him.

> II. Defendant-Appellant can establish good cause [for failure to raise this issue previously] by virtue of ineffective assistance of counsel of both trial and appellate counsel.

The trial court denied Petitioner's motion. *People v. Wardlaw*, No. 95-138712-FH, Order (Oakland Cnty. Cir. Ct., Oct. 18, 2002). Petitioner later filed in the Michigan Court of Appeals a delayed application for leave to appeal in which he asserted the following claims:

> I. Defendant-Appellant was denied due process and equal protection of law where the trial court - contrary to governing rules of state and federal law, committed clear and reversible error by failing to personally advise Defendant-Appellant in a clear and intelligent manner those preeminent constitutional rights waived by entry of a guilty plea as required by MCR 6.302(B)(3), therefore, requiring reversal and vacation of the guilty plea.
>
> II. Defendant-Appellant was denied effective assistance of trial level counsel where counsel - contrary to governing rules of state and federal law, failed to recognize, object to and pursue the trial court's omissions during the plea taking process, therefore, requiring reversal and vacation of the guilty plea.
>
> III. Defendant-Appellant was denied effective assistance of appellate level counsel where counsel - contrary to governing rules of state and federal law, failed to recognize, object to and pursue both the trial counsel's and trial court's omissions during the plea taking process, therefore, requiring reversal and vacation of the guilty plea.
>
> IV. Defendant-Appellant, having satisfied the good cause, actual prejudice and manifest injustice requirements of MCR 6.508(D), is entitled to full, fair and unfettered post-conviction/post-appellate/collateral review of the claims of error brought on for appeal sans procedural bar.

The court denied Petitioner's request for leave to appeal "for lack of merit in the grounds presented." *People v. Wardlaw*, No. 249928, Order (Mich. Ct. App., Nov. 17, 2003). Asserting the

same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Wardlaw*, No. 125487, Order (Mich., Oct. 25, 2004). On December 16, 2004, Petitioner submitted the present petition for writ of habeas corpus in which he asserts the following claims:

> I. Petitioner was denied due process and equal protection of law where the trial court - contrary to governing rules of state and federal law, committed clear and reversible error by failing to personally advise Petitioner in a clear and intelligent manner those preeminent constitutional rights waived by entry of a guilty plea and, therefore, requires reversal and vacation of the guilty plea.
>
> II. Petitioner was denied effective assistance of trial level counsel where counsel - contrary to governing rules of state and federal law, failed to recognize, object to and pursue the trial court's omissions during the plea taking process, and therefore, requires reversal and vacation of the guilty plea.
>
> III. Petitioner was denied effective assistance of appellate level counsel where counsel - contrary to governing rules of state and federal law, failed to recognize, object to and pursue both the trial counsel's and trial court's omissions during the plea taking process - which effectively denied him the right to appeal, and therefore, requires reversal and vacation of the guilty plea.
>
> IV. Petitioner, having satisfied the good cause, actual prejudice and manifest injustice requirements of MCR 6.508(D), is entitled to full, fair and unfettered post-conviction/post-appellate/collateral review of the claims of error brought on for appeal, sans procedural bar.

**STANDARD OF REVIEW**

Wardlaw's petition, filed December 16, 2004, is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *see also, Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular...case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Lancaster*, 324 F.3d at 429 (quoting *Williams*, 529 U.S. at 407).

Furthermore, for a writ to issue, the Court must find a violation of Supreme Court authority. The Court cannot look to lower federal court decisions in determining whether the relevant state court decision was contrary to, or involved an unreasonable application of, clearly established Federal law. *See Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the factual findings of the state court are presumed to be correct. *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1)). Petitioner can rebut this presumption only by clear and convincing evidence. *Id.*

The deferential standard articulated by the AEDPA, however, does not apply if the state has failed altogether to review a particular claim. As the Sixth Circuit has indicated, where the state court clearly did not address the merits of a claim, "there are simply no results, let alone reasoning, to which [the] court can defer." In such circumstances, the court conducts a *de novo* review. *See McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003); *see also Wiggins v. Smith*, 123 S. Ct. 2527, 2542 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address Petitioner's claims because of a failure to satisfy state procedural requirements. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Where Petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court. *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply, (2) the state court must have actually enforced the state procedural rule, and (3) the default must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim. *See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). Furthermore, to find that a petitioner has procedurally defaulted a particular claim, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).

If Petitioner has procedurally defaulted a particular claim, federal habeas review is available only if he can establish the existence of cause and prejudice for his procedural default, or if a fundamental miscarriage of justice would result from the failure to grant the relief he seeks. *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991); *Coleman*, 501 U.S. at 750-51; *Buell*, 274 F.3d at 348.

With respect to cause, Petitioner must demonstrate the existence of some objective factor, external to the defense, which impeded his efforts to comply with the applicable procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish that a miscarriage of justice would result from the Court's failure to review his procedurally defaulted claims, Petitioner must make a "colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). The burden to make this showing rests with Petitioner, *see Floyd v. Alexander*, 148 F.3d 615, 618 (6th Cir. 1998); *Mitchell v. Rees*, 114 F.3d 571, 577 (6th Cir. 1997), who must demonstrate the existence of new and reliable evidence, not presented at trial, which establishes that some constitutional error probably resulted in the conviction of an innocent person. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995). The evidence must show that it is "more likely than not that no reasonable juror would have convicted him in light of the

new evidence." *Id.* at 326. This requires Petitioner to overcome a hurdle higher than that to establish prejudice. *Id.*

Michigan Court Rule 6.508 provides that a defendant may not collaterally attack a conviction based upon claims that were decided against him in a prior appeal or that could have been raised in a prior appeal. M.C.R. 6.508(D)(2)-(3). With respect to claims which could have been raised in a prior appeal, a defendant is entitled to relief only if he can establish both "good cause" for failing to assert the issue previously and "actual prejudice" resulting therefrom. M.C.R. 6.508(D)(3). In this context, "actual prejudice" is defined as a "reasonably likely chance of acquittal" or an "irregularity so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand." M.C.R. 6.508(D)(3)(a)-(b).

The Sixth Circuit has held that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constitutes a sufficient determination that the court's conclusion was based on procedural default. *See Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2002); *Simpson*, 238 F.3d at 407. Furthermore, Rule 6.508(D), regularly followed since 1990, constitutes an independent and adequate state ground, the reliance on which precludes federal review of those issues as to which it is applied. *Simpson*, 238 F.3d at 407.

As noted above, the claims asserted in Wardlaw's petition for writ of habeas corpus were not asserted in his appeal as of right, but were instead first advanced by Petitioner in his attempt to secure post-conviction relief in the state courts. As previously noted, however, the Michigan Supreme Court rejected these claims on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Petitioner has, therefore, procedurally defaulted the claims

asserted in his petition for writ of habeas corpus. Petitioner argues that his default should be excused because his trial and appellate counsel both rendered ineffective assistance by failing to "recognize, object to and pursue" his claim that his guilty plea was not made voluntarily, knowingly, or intelligently. While the ineffective assistance of counsel can "supply the cause that, together with prejudice, would excuse a procedural default," *see McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), Petitioner cannot establish that his attorneys were ineffective for failing to challenge the validity of his guilty plea.

To establish that he was denied the right to the effective assistance of counsel, Petitioner must first establish that his counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688. In making this determination, however, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.

Second, Petitioner must further establish that he suffered prejudice as a result of attorney's performance. *See Id.* at 687; *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so <u>manifestly</u> ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original); *see also, West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996). Because Petitioner's claim that his guilty plea was invalid is without merit, he cannot demonstrate that his attorneys were ineffective for failing to pursue such.

Petitioner asserts that his guilty plea is not valid because the trial judge "failed to personally advise him" that by entering a plea of guilty he would be surrendering the following rights: (1) the right to a jury trial; (2) the right to a non-jury trial; (3) the right to remain silent at trial; and (4) the right not to have his silence used against him. Citing to Michigan Court Rule 6.302(B)(3) and *Boykin v. Alabama*, 395 U.S. 238 (1969), Petitioner asserts that the trial judge was required to "verbally describ[e] each and every right waived."

First, to the extent that Petitioner's claim relies on an alleged failure to comply with state law, such fails to advance his cause, as habeas relief is available only if Petitioner can demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Moreover, Petitioner's assertion that the trial judge was required to specifically describe or identify "each and every" right he waived by pleading guilty is incorrect. Finally, as discussed below, the trial judge did, in fact, specifically advise Petitioner that by pleading guilty he would be surrendering the four rights Wardlaw identifies in his petition.

A guilty plea is more than an admission that the accused performed certain acts, but is instead "a conviction." *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). Following a guilty plea "nothing remains but to give judgment and determine punishment." *Id.* By pleading guilty a criminal defendant surrenders several important constitutional rights, including (a) the privilege against compelled self-incrimination; (b) the right to trial by jury; and (c) the right to confront one's accusers. *Id.* at 243. To ensure that a criminal defendant is not improperly deprived of these (and other) rights, to be valid a guilty plea must be made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005).

Petitioner is correct that the *Boykin* Court identified certain rights (identified immediately above) which a criminal defendant waives by pleading guilty. While the *Boykin* Court made clear that waiver of these (and other) rights cannot be assumed, the Court did not hold (as Petitioner further asserts) that a guilty plea is valid only where a criminal defendant was first notified as to each and every right he would be waiving by pleading guilty. *Boykin*, 395 U.S. at 243-44. In fact, less than one year after its *Boykin* decision the Supreme Court, in *Brady v. United States*, 397 U.S. 742 (1970), upheld the validity of a guilty plea even though the defendant had not been specifically advised of the rights identified by the *Boykin* Court. *Id.* at 743-58. With respect to its *Boykin* decision, the Court clarified that its significance stating that "[t]he new element added in *Boykin* was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." *Id.* at 747 n.4.

Accordingly, as other courts have since recognized, neither *Boykin* nor any other Supreme Court authority requires that a criminal defendant be specifically advised of any particular rights before his guilty plea can be deemed constitutionally valid. *See, e.g., Threadgill v. Galaza*, 2006 WL 2084165 at *3 (E.D. Cal., July 25, 2006) ("specific articulation of the *Boykin* rights is not the sine qua non of a valid guilty plea;" if the "record demonstrates that a guilty plea is knowing and voluntary, no particular ritual or showing on the record is required"); *United States v. Toles*, 1992 WL 129284 at *3 (9th Cir., June 4, 1992) ("*Boykin* does not require that the trial judge specifically list each right waived by a defendant who pleads guilty"); *Carter v. Brooks*, 2001 WL 169584 at *6-7 (D. Conn., Feb. 13, 2001) (the Supreme Court has "in no way intimated the precise terms of the inquiry that the trial judge should make of a defendant before accepting his plea" and "a guilty plea will not be invalidated simply because of the district court's failure. . .to enumerate one or more of the rights waived by the defendant as the

result of such a plea"); *United States v. Smith*, 1990 WL 92601 at *2 (9th Cir., July 5, 1990) (the standard is not whether the trial judge specifically articulated certain rights, but whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant").

Accordingly, the relevant question presented by Petitioner's claim is not whether the trial judge specifically articulated or identified for Petitioner a list of the various rights he would be surrendering by pleading guilty. Rather, as noted above, the question is whether Petitioner's decision to plead guilty was made "voluntarily, knowingly, and intelligently" with "sufficient awareness of the relevant circumstances and likely consequences." The plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Wilkerson v. Jones*, 109 Fed. Appx. 22, 23 (6th Cir., Aug. 6, 2004) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Determining whether a guilty plea satisfies this standard requires "an evaluation of all the relevant circumstances surrounding the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).

At the plea hearing, the trial judge questioned Petitioner at length regarding his decision to plead guilty. (Plea Hearing, March 22, 1999, 12-24). During this exchange, Petitioner acknowledged that he is able to read, write, and understand the English language. *Id.* at 12. Petitioner stated that he was "very much" satisfied with his attorney's representation. *Id.* The trial judge explained to Petitioner every count with which he was charged and the possible penalty for each. *Id.* at 12-13. Petitioner acknowledged that he understood the terms of his *Cobbs* plea agreement. *Id.* at 13-14. The trial judge explained to Petitioner that he enjoyed the right to be represented by counsel at every stage of the proceedings (including if the matter went to trial) and that if he could not afford an attorney one would be provided for him at no cost. *Id.* at 14. The trial judge informed Petitioner that he was "presumed

innocent until the prosecutor proves [his] guilt beyond a reasonable doubt." *Id.* at 14-15. The trial judge instructed Petitioner that he had the right to confront the witnesses against him and subpoena witnesses in his behalf. *Id.* at 15. Contrary to Petitioner's assertion, the trial judge instructed Petitioner that while he had the right to testify in his own behalf, he did not have to do so and that his decision not to testify could not be used against him. Again, contrary to Petitioner's claim, the trial judge informed Petitioner that if he pleaded guilty he would "not have a trial of any kind." *Id.* Petitioner was informed that if he pleaded guilty he would stand convicted of the charges against him. *Id.* at 16. Petitioner stated that no promises or threats had been made to secure his guilty plea. *Id.* at 16-17. Petitioner stated that his plea was voluntary. *Id.* Finally, Petitioner admitted the factual basis for every charge against him. *Id.* at 17-24. In addition to this on-the-record and under-oath exchange between Petitioner and the trial judge, Petitioner completed and signed a form which detailed the numerous rights which Petitioner would be surrendering by pleading guilty. (Dkt. #19).

Considering the totality of the circumstances, Petitioner's claim that his guilty plea was not offered voluntarily, knowingly, and intelligently is without merit. Because this particular claim is without merit, Petitioner cannot establish that his attorneys were ineffective for failing to challenge the validity of his guilty plea on direct appeal. The Court is precluded, therefore, under the procedural default doctrine, from addressing the merits of Petitioner's claim that his guilty plea is constitutionally infirm. However, even were the Court to conclude that there existed good cause for Petitioner's failure to challenge the validity of his guilty plea on direct appeal, the Court is nonetheless precluded from addressing the merits of Petitioner's claim because Petitioner cannot demonstrate that his attorneys' failure to challenge the validity of his guilty plea caused him to suffer prejudice.

As part of his *Cobbs* plea agreement, Petitioner receive a prison sentence, the minimum duration of which was 32 years less than the *minimum* period of incarceration required by Michigan law. Petitioner has presented no evidence from which it can reasonably be concluded that he would have obtained a more favorable sentence even had his attorneys successfully challenged the validity of his guilty plea. Moreover, had Petitioner declined the plea agreement and been convicted at trial he would have then faced a term of imprisonment of *at least* 52 years. In sum, Petitioner cannot establish that he suffered prejudice as a result of his attorneys' failure to challenge the validity of his guilty plea.

In conclusion, for the reasons articulated herein Petitioner's claims of ineffective assistance of counsel are without merit and cannot, therefore, form the basis for habeas relief. Moreover, because these claims are without merit Petitioner cannot demonstrate cause and prejudice to overcome his procedural default. Accordingly, the Court is precluded from addressing the merits of the claims asserted in Wardlaw's petition for writ of habeas corpus, as such claims are procedurally defaulted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Wardlaw's petition for writ of habeas corpus be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

          Respectfully submitted,

Date: January 7, 2008            /s/ Ellen S. Carmody
          ELLEN S. CARMODY
          United States Magistrate Judge